JANE PERKINS EDMONDSON, by, etc., *vs.* DAVID C. EDMONDSON & others.

April Term, 1874.

WILL—CONSTRUCTION—RULE OF EJUSDEM GENERIS.—A testatrix, after mentioning and giving a specific bequest to each of her heirs and next of kin, concluded her will as follows: " I give to my *neace* Jane Perkins Edmondson all the *ballance* of my *propperty* of every description, two *fether* beds and bedsteds and *furnature*, one *soffa*, one wardrobe, one washstand, and all the money and notes that may be on hand at my death." *Held*, that a remainder interest in land subject to the dower of the testatrix' mother, then living, passed under this will to the residuary devisee.

*J. L. Rice*, for residuary devisee.
*E. H. East, R. Ewing*, for the heirs.

THE CHANCELLOR:—John F. O'Neil died in 1842, leav-

ing a widow and six children, viz, Henry W. O'Neil, Alfred P. O'Neil, Pricilla O'Neil, now Edmondson, Mary L. O'Neil, Jane C. O'Neil, and Jno. M. O'Neil. The widow had allotted to her in dower, 103 acres of the land of her. deceased husband, and died on the the the 7th of October, 1872. In the meantime, the two last named of the children had departed this life intestate and without children. Alfred O'Neil also died leaving three children, and Pricilla O'Neil married Edmondson and had two children. In this situation of the family, Mary L. O'Neil died, having first made her will on the 6th of November, 1868, which is now before the court for construction.

This will, after the usual formal opening, proceeds as follows:

"I do make this my last will and testament in manner and form following, to-wit:

" 1st. After all my lawful debts and funeral expenses and doctors bills are paid, I give to my brother Alfred P. O'Neil's heirs five dollars each (namely Nathaniel Clinton O'Neil, Caroline A. O'Neil, David O'Neil). I give to my brother Henry O'Neil and his bodily heirs five dollars. I give to my sister Pricilla Edmondson all of my wearing *apperrel* of every *dis*cription and jewelry. I give to my nephew J. W. S. Edmondson my gray horse. I give to my *neace* Jane Perkins Edmondson all the ba*ll*ance of my pro*pp*erty of every description two *fether* beds and bed*steds* and furn*a*ture, one ·bureau, one *soffa*, one wardrobe, one washstand, and all the money and notes that may be on hand at my death. I nominate and appoint David C. Edmondson my executor of the above will."

The question to be decided is, whether the interest of the testatrix in the land allotted to her mother for dower, being at the time of her death an undivided fourth, passed under this will to Jane Perkins Edmondson.

It is clear, and is not denied, that the words "I give to my *neace* Jane Perkins Edmondson all the ba*ll*ance of my property of every description," would pass the land in contro-

versy, unless limited by the words which follow. 1 Jar. 660, *et seq.;* 2 Red. Wills, 699.

It is also recognized as well settled, that where a person engages in an act so solemn and important as the execution of a will, the presumption is that such person did not intend to die intestate as to any portion of his property. *Williams v. Williams,* 10 Yer. 25 ; *Rogers* v. *Rogers,* 2 Head, 262 ; *Jarnagin* v. *Conway,* 2 Hum. 50.

This presumption is strengthened in the present case by the fact that the testatrix mentions in her will, and makes some provision for every person who had any claim upon her as heir or next of kin, thereby showing that she knew who they were, and intended to give certain of them only a limited part of her estate. She makes a bequest to her only living brother and only living sister. She mentions the three children of a deceased brother, the only one who had left children, and gives each a bequest. She gives something to the son of her living sister, and then makes the provision now in question in favor of the daughter of that sister.

Under these circumstances, with the presumption of law in favor of entire testacy, strengthened by the express mention of all who had a claim upon her estate, and with a general residuary clause at the close, couched in such terms as would carry all her estate, the conclusion that the land in controversy does pass would be irresistible, unless there is a clear intent on the face of the will to the contrary, or some rigid rule of construction which compels us to hold otherwise.

It is not contended that there is a clear expression on the face of the will which shows that the testatrix intended to die intestate as to the land in question. It is urged, outside of the will, that the testatrix perhaps overlooked her interest in the land, that interest being only in remainder after the death of her mother, who was then alive, and who survived her. But this might be urged in every case where a will fails specifically to mention property, and is directly in

the teeth of the presumption of testacy already mentioned, which can only arise when there has been an omission in the will distinctly to dispose of specific property.

But it is earnestly urged, and ably argued, that there is a rule of construction which requires the court, in view of the language used in connection with the general clause of disposition, to limit the meaning which would otherwise be given to that clause. This is the rule of the *ejusdem generis*. The fact that the general words of disposition are immediately followed by an enumeration of particulars, all consisting of articles of personal property, it is insisted, confines the meaning of these words to property of a like character.

It must be admitted that the early English cases cited and relied upon in argument do go far to sustain the position assumed. The English courts, at one time, seemed much inclined to established a technical rule on the subject, which would enable them to cut the knot promptly if they could not solve it. Mr. Jarman, in his able work on wills, after citing these cases, says : " But it is not to be inferred from the preceeding cases, that the words estate and property, and others of like import, when accompanied by words descriptive of personal estate merely, are by that association invariably restricted to property *ejusdem generis*. On the contrary, the *presumption is generally against such a construction*, as it supposes the testator to use words in another sense than that which judicial construction has given them." 1 Jar. 663.

The learned author then cites the more recent cases, and among others the following, in each of which the general words of disposition were held to carry realty, and not to be restricted by the accompanying words descriptive only of personalty.

" All the rest, residue, and remainder of my money, stock, *property*, and effects of what kind or nature soever." *Andrew* v. *Lainchbury*, 11 East, 290.

" All the rest and residue of my *estate*, goods, and chattels whatsoever." *Tanner* v. *Morse*, C. Temp. Talbot, 284.

"The residue of my *property*, goods and chattels." *Doe* v. *Langlands*, 14 East, 370.

"All money, securities for money, goods, chattels, *estate*, and effects of what nature and kind soever, and wheresoever the same might be." *Doe* v. *Evans*, 9 Ad. & El. 720.

"The last three cases," says Mr. Jarman, "are certainly important authorities, and they demonstrate the inclination of the courts, at the present day, to hold lands to pass under words capable of comprehending them, notwithstanding their association with terms applicable to personalty alone." 1 Jar. 671.

The same learned author, in treating of cases where words inclusive of all personalty were sought to be limited by the enumeration of particular kinds of personalty, says : "These cases indicate the disposition of the judges of the present day to adhere to the sound rule, which gives to words of a comprehensive import their full extent of operation, unless some very distinct ground can be collected from the context for considering them as used in a special and restrictive sense." 1 Jar. 700.

The conclusion of Mr. Redfield is similar. "But we understand," he says "that the general rule of construction in regard to the import and extension of the words ' estate,' ' property,' etc., is now settled as already stated (that they are to have their full meaning), and that it is now considered that the terms shall be regarded as intended to include real estate, unless there is something *in the will*, which, with reference to such surrounding circumstances as are properly admissible in aid of the construction, fairly justifies the conclusion that they were not intended to be used in that enlarged sense." 2 Red. Wills, 691. And he quotes, in this connection, with approbation, the language of Lord Eldon in *Church* v. *Mundy*, 15 Ves. 396, 406, "It is much more safe to consider those subjects intended which the words describe, than to supply a purpose by conjecture." "The best rule of construction is that which takes the words to comprehend a subject that falls within their usual sense,

unless there is something like declaration plain to the contrary."

The question came before our Supreme Court in the case of *Williams* v. *Williams*, 10 Yer. 26, where an earnest attempt was made, based upon the early English cases, to establish the technical or rigid rule of construction. But the court distinctly denied that the English cases laid down a rule "of artificial and arbitrary construction, controlling and countervailing the actual intention of the testator, to be gathered from the context and scope, and frame of the will." " The great rule in the construction of wills," say the court in that case, " to which this one of *ejusdem generis* and all others, except those founded upon public policy, are not only subordinate but ancillary, is, that the intention of the testator, to be ascertained from the particular words used, from the context and from the general scope and purpose of the instrument, is to prevail and have effect." " In an enumeration of particulars," they add, " general and comprehensive terms are sometimes used, in the construction of which reason and good sense require, that, if you would not violate the intention of the writer, their meaning must be restricted to things of a like nature and description with the particulars among which they are found. This is a rule of intention, and it readily yields where the circumstances show that a reliance upon it would defeat, rather than effectuate the intention." And see *Den* v. *Payne*, 5 Hay. 104; *Jarnagin* v. *Conway*, 2 Hum. 50; *Perry* v. *High*, 3 Head, 351.

The conclusion is, that the mere enumeration of certain particulars in this will in connection with the general words of disposition, is not sufficient to limit the comprehensive import of these words, under the settled rules of construction in such cases. Costs will be paid by the residuary devisee.